# Andrew D. Carmichael, Plff. in Err., *v.* Phoebe Thompson.

A deed of land to a trustee, for the use of the *cestuis que trust* for their lives or the life of the survivor, with the right to the *cestuis que trust* to occupy and improve the same, and providing that the estate so granted

Cited in Claflin v. Claflin, 149 Mass. 19, 3 L. R. A. 370, 14 Am. St. Rep. 393, 20 N. E. 454.

NOTE.—For the execution of dry trusts see note to Arnold v. Harper, 4 Sad. Rep. 126.

in trust shall be in no way liable for debts of the *cestuis que trust,* and that after the death of the *cestuis que trust* it shall go to their heirs forever,—creates a special, active trust and vests the legal estate in the trustee; hence, a deed of the land by the *cestuis que trust* back to the grantor will be inoperative and will give no title to one subsequently taking the land from the original grantor.

(Decided November 1, 1886.)

Argued October 13, 1886, before GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. October Term 1886, No. 60, W. D. Error to the Common Pleas of Mercer County to review a judgment *non obstante veredicto* for defendant in an action of ejectment. Affirmed.

April 16, 1854, John Carmichael and wife by deed conveyed to Aaron Carmichael, trustee, the land in question for the use of Phoebe Thompson, daughter of grantors, and Elijah Thompson, her husband. Said Phoebe and Elijah Thompson occupied the premises until January 8, 1858, when in consideration of $300 they made and executed a deed to John Carmichael the original grantor, who took possession and remained in possession until his death in January, 1866. By his last will and testament John Carmichael devised the land in question to his son, John Carmichael, Jr., who entered into possession after his father's death and maintained the same until February 26, 1885, when by quitclaim deed he conveyed the same to A. D. Carmichael, the plaintiff in this case, who immediately thereafter entered into possession.

In April, 1885, the said Phoebe Thompson took possession of a vacant house on the premises and asserted her right to hold the land under the conveyance by John Carmichael and wife to Aaron Carmichael, for the use of Phoebe and Elijah Thompson; whereupon, A. D. Carmichael brought this action of ejectment to recover possession. The jury found a verdict for plaintiff in accordance with the following instruction of the court:

"We will instruct you to find a verdict in favor of the plaintiff in this case for the land described in the writ, subject to the opinion of the court as to whether the estate taken by Phoebe and Elijah Thompson under the deed of the 16th of April, 1854, from John Carmichael and wife to Aaron Carmichael, trustee, was such an estate as would enable them to reconvey to John

Carmichael the fee simple so attempted to be done by the deed of the 8th of January, 1858, from Elijah and Phoebe Thompson to John Carmichael."

The court, MEILARD, P. J., on motion of defendant for judgment *non obstante veredicto,* delivered the following opinion:

"The point reserved in this case involves the single question whether the deed of April 16, 1854, from John Carmichael and wife to Aaron Carmichael, created a simple use or a special, active trust. The part of the deed which give rise to this question is as follows, *viz.:* 'In trust, nevertheless, for the following uses, *viz.:* That is to say, for the use of the said Phoebe Thompson and her husband, Elijah Thompson, for and during their natural lives and the life of the survivor of them, with the right to said Phoebe and Elijah to occupy and improve the same; but the estate hereby granted, bargained and sold in trust as aforesaid, to be in no way or manner liable, either by attachment, execution, or any other legal process, for the sole or joint debt or debts of the said Phoebe and Elijah heretofore or hereafter to be contracted by them; and from and after the decease of the said Phoebe and Elijah for the use of the heirs of the body of the said Phoebe Thompson, formerly Phoebe Carmichael, forever.' The consideration named in the deed is $10 and the natural love and affection which the grantors had for their daughter, Phoebe Thompson.

"The question presented here is not a new one. It has arisen in many different shapes. Our supreme court was long ago called upon to decide it, and the decision which was then made has since been often repeated. Our duty, then, is simply to see whether the provisions of this deed have, in substance, been interpreted in the cases decided, with a view to determining the nature of the trust created by it.

"One of the earliest cases in this state on the subject of what have come to be termed 'spendthrift trusts,' is Fisher v. Taylor, 2 Rawle, 33. In that case the executors of the last will, etc., of Matthew Taylor, deceased, in compliance with the directions of the testator, purchased a piece of land from John Graham and took a deed to themselves, their heirs and assigns, in trust for Sample Taylor, to have the rents, issue, and profits during life but not subject to his debts; remainder to the heirs of his body, in fee; reversion to the heirs of Matthew Taylor. It was held

that the executors took and held the title, during the lifetime of Sample Taylor, in special, active trust.

"In Ashhurst v. Given, 5 Watts & S. 323, the facts were as follows: James Given devised to his son Samuel 'the one undivided half part of the Kidderminster estate, including the factory buildings, dwelling houses,' etc., 'in trust for the following purposes and uses, *viz.:* that he shall possess, occupy, and manage the same, and conduct and carry on the business there, etc. The trustee is given the right to sell the property devised to change the character of investment—in short, to do anything with the property or its products that an absolute owner might do. The trust was further declared to be 'for the use of such child or children as the said Samuel may have lawfully begotten at the time of his death' with reversion to heirs of testator. The will then continues: 'And in consideration that my son Samuel shall and will undertake and continue to execute personally and perform the trusts hereby committed to him, he shall be allowed a reasonable support out of the trust fund for his personal services rendered. I desire that it shall be understood that it is not because of the want of confidence which I might have in my son Samuel that I make no devise or bequest absolutely to him, but it is because I desire to provide against my bounty to his children and my heirs being appropriated to those debts which he contracted in an unfortunate business.' It was held that the estate was not subject to execution for the debts of Samuel contracted previously to the devise.

"In Rife v. Geyer, 59 Pa. 393, 98 Am. Dec. 351, the testator, Jacob Geyer, gave to William Baxter 'one equal eighth part of all his property and estate, real, personal, and mixed,' in trust, as to the real estate, to let and demise the part thereof which should be allotted to said trustee, and to receive the rents and income thereof, and pay the same over to Stephen H. Geyer or to such other person as he might appoint or empower to receive the same, 'or at his option, to permit and suffer him, the said Stephen H. Geyer, to let, demise, occupy and enjoy the said equal eighth part, . . . and every part thereof, and receive and take the income thereof during all the term of his natural life, for his own separate use, and so the same shall not be in the power, or liable to the debts, control, or engagements of the said Stephen H. Geyer . . . and from, and immediately after the decease of the said Stephen H. Geyer, then to hold [the

same] . . . in trust, to and for the only proper use, benefit, and behoof of the heirs and legal representatives of the said Stephen H. Geyer, their heirs and assigns forever.' After partition, Baxter conveyed the part he took in trust to his *cestui que trust,* Stephen H. Geyer, who, some months thereafter, conveyed the same in mortgage to Rife. It was held that, in view of the object of the testator as expressed in his will, the trust was of necessity an active one, requiring the legal estate to be vested in the trustee.

"In Philadelphia Trust, S. D. & Ins. Co. v. Guillon, 100 Pa. 254, the facts were almost identical with those in Rife v. Geyer, 59 Pa. 393, 98 Am. Dec. 351. William Jenks Fell, the *cestui que trust,* was joined as trustee with the Philadelphia Trust & Safe Deposit Company. At his option he was to use and occupy any lands, messuages, or tenements belonging to the estate. The case was considered by the supreme court as though William H. Fell had exercised the option given to him and had taken the lands, etc., into his immediate control, or use and occupation. But whether he had or not was considered an immaterial question; and it was held that as the trust was evidently intended to protect the property from the creditors of the *cestui que trust,* it was of necessity a special, active trust.

"The principle upon which all of these decisions proceed was laid down in 1823 by the supreme court in the case of Holdship v. Patterson, 7 Watts, 551, and, as stated by Chief Justice GIBSON, is as follows: 'A benefactor may certainly provide for a friend without exposing his bounty to the debts or improvidence of the beneficiary. He has an individual right of property in the execution of the trust, and to deprive him of it would be a fraud on his generosity. To appropriate a gift to a purpose or person not intended would be an invasion of the donor's private dominion.'

"Since the decision of Holdship v. Patterson, the question whether a trust be passive or active has been uniformly answered by determining whether the grantor, in creating a trust, clearly expressed its purpose to be such as required the title to vest and continue in the trustee. If so the trust was considered as of necessity an active one: 'Wherever it is necessary for the accomplishment of any object of the creator of the trust that the legal estate should remain in the trustee, then the trust is a special, active one. Barnett's Appeal, 46 Pa. 399, 86 Am. Dec. 502.

The true test is whether a court of equity in Pennsylvania would decree a conveyance of the legal title.' Rife v. Geyer, 59 Pa. 396, 98 Am. Dec. 351.

"In the deed now under consideration, John Carmichael clearly expressed his intention to convey the land described in it so that it would 'be in no way or manner liable, either by attachment, execution or any other legal process, for the debts of either of the *cestuis que trust.* That was not only an undoubted object of the trust, but it was evidently the ruling object; for while he gives to Phoebe and Elijah Thompson the right to occupy and improve the land, he immediately qualifies that act by adding, 'but the estate hereby granted . . . in trust as aforesaid, to be in no way or manner liable,' etc., for their debts. Would a court of equity, in view of the provisions of this deed, have decreed that the trustee should convey the legal title to the *cestuis que trust?* I think the court would have been compelled to answer under the decisions: 'John Carmichael had an individual right of property in the execution of this trust; an important object of that trust was to protect it from the debts or improvidence of the beneficiaries; if the conveyance be decreed, this object will be defeated; and that would be a fraud on the donor's generosity, and an invasion of his dominions.' Therefore the decree could not be made.

"This case then seems to be within the principle of the decisions cited above. A comparison of the facts, moreover, shows that those appearing in this case are identical with those of some of the cases cited. As this opinion is growing too long I will refer briefly to but one of the above cases. In Fisher v. Taylor, 2 Rawle, 33, the executors of Matthew Taylor took the land by deed from John Graham; the *cestui que trust* was to have the rents, issues, and profits, during life, but not subject to his debts. The only point of difference is that in this case Phoebe and Elijah Thompson were given 'the right to occupy and improve,' while Sample Taylor was given 'the rents, issues, and profits;'— including at least as much as the right given to the Thompsons. Miller v. Casselberry, 47 Pa. 376; Allen v. Henderson, 49 Pa. 333.

"In Fisher v. Taylor the supreme court said: 'It was necessary that the executors should take the legal estate for the purposes of the trust, in order to give effect to the testator's intention. . . . A different construction would make the

beneficial interest which the testator intended to provide for his son subject to be sold for his debts, when he expressly declared that it should not be so subject; and would thus set up a new will in place of that which it affected to interpret.' If the intention of Matthew Taylor to protect his bounty from the creditors of his son made the trust necessarily a special, active one, so then did the intention of John Carmichael, so plainly set forth in this deed, to protect the land it conveyed from the debts of his daughter and her husband, carrying with it a power and duty continuing in the trustee and obliging him to protect the trust in accordance with the object of his appointment.

"The conclusion follows that the deed in question created a special, active trust; that the legal estate vested in the trustee, and therefore that the deed from the *cestuis que trust,* back to John Carmichael, was inoperative, and did not convey the estate, and the plaintiff's title is invalid.

"It is accordingly ordered, adjudged, and decreed that, upon payment of the jury fee, judgment be entered for the defendant *non obstante veredicto.*"

Judgment was accordingly entered, and plaintiff took this writ, assigning as error the action of the court in directing judgment for the defendant *non obstante veredicto.*

*J. G. White* and *J. A. Stranahan,* for plaintiff in error.—The deed of January 8, 1858, at least extinguished the life estate of the said Phoebe and Elijah, or any estate they then had in the land; and the extinguishment of the life estate destroyed the remainder that depended upon it. Baldridge v. McFarland, 26 Pa. 388; Findley v. Riddle, 3 Binn. 139, 5 Am. Dec. 355; 2 Rawle, 168, 19 Am. Dec. 632.    ·  -  · ·  -    ·  --    · ·

*Mason & Mason,* for defendant in error.—A benefactor has the power of restricting the enjoyment of his bounty through the medium of a trust during the life of the beneficiary. Fisher v. Taylor, 2 Rawle, 33; Thackara v. Mintzer, 100 Pa. 151.

"It has also been expressly held that wherever there is a trust of this nature, it is of necessity an active trust, requiring the legal estate to be vested in the trustee." The true test as to a trust being dry or active is whether equity in Pennsylvania would decree a conveyance by the legal title. Whenever chan-

cery would execute a trust, or decree a conveyance, the courts in Pennsylvania through a jury would direct a recovery in ejectment. Rife v. Geyer, 59 Pa. 393, 98 Am. Dec. 351.

In Kay v. Scates, 37 Pa. 37, 78 Am. Dec. 399, STRONG, J., in enumerating special, active trusts, requiring the legal estates to be in the trustee, speaks of trusts "to preserve contingent remainders, or to protect property, for the sole and separate use of a married woman, or from the creditors of the *cestui que trust."*

The legal title was in Aaron Carmichael, the trustee. It was not in his power to destroy the trust, "unless by a sale to a purchaser for a valuable consideration, *bona fide* and without notice, and then he will be held answerable out of his own means to the full value and on the same trusts." Rife v. Geyer, 59 Pa. 397, 98 Am. Dec. 351.

PER CURIAM:

The only question in this case is that which arises on the point of law reserved by the court below, and upon which judgment *non obstante veredicto* was entered for the defendant.

That the trust, created by the deed of John Carmichael to Aaron Carmichael, in favor of Phoebe and Elijah Thompson was an active one, we have no doubt, and this matter has been so ably discussed in the opinion of the learned judge of the common pleas that we deem a further elucidation of it unnecessary.

Judgment affirmed.